Robert S. Clark (4015)
Laura G. Kennedy (7238)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah  84111
Telephone: (801) 532-7840
Email: rclark@parrbrown.com
        lkennedy@parrbrown.com

*Attorneys for Defendants Kirton McConkie, PC
Larry S. Jenkins, and David J. Hardy*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION, STATE OF UTAH

| | |
|---|---|
| JAKE M. STRICKLAND, personally and individually; and JAKE M. STRICKLAND for and on behalf of J.D.S., his biological Minor Child (dob 12/29/2010);<br><br>Plaintiffs,<br><br>v.<br><br>WHITNEY VIVIAN DEMKE, f/k/a WHITNEY VIVIAN PETTERSSON; LDS FAMILY SERVICES; PAMELA TAYLOR; J.K.Y., current adoptive father, J.T.Y., current adoptive mother; WOOD CRAPO LLC; WOOD JENKINS LLC, KIRTON & MCCONKIE LLC; LARRY S. JENKINS; DAVID J. HARDY; and JOHN DOES I TO XX;<br><br>Defendants. | **REPLY MEMORANDUM IN SUPPORT OF RULE 54 MOTION OF KIRTON & MCCONKIE, LLC, LARRY S. JENKINS, AND DAVID J. HARDY FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Case No. 2:13-cv-01130<br><br>Judge Dee Benson |

Pursuant to Rule 54 of the Federal Rules of Civil Procedure and DUCivR 54-2,

Defendants Kirton McConkie, PC[1] ("Kirton McConkie"), Larry S. Jenkins ("Mr. Jenkins"), and

---

[1] The correct name of the defendant is "Kirton McConkie, PC."

David J. Hardy ("Mr. Hardy") (collectively, the "KM Defendants"), respectfully submit this reply memorandum in support of their Rule 54 motion for attorneys' fees and expenses [Dkt. 80] (the "Motion") and in response to Plaintiff Jake M. Strickland's ("Plaintiff" or "Mr. Strickland") memorandum in opposition [Dkt. 86] (the "Opposition").

## INTRODUCTION

When Plaintiff filed his lengthy *Verified Complaint* ("Complaint"), the KM Defendants were faced with 77 pages plus 24 exhibits of claims and allegations and a potential damages award which, including Plaintiff's claim for attorneys' fees, <u>exceeded $390 Million</u>. Plaintiff named several other defendants, thereby requiring the KM Defendants' legal counsel at Parr Brown Gee & Loveless ("Counsel" or "Parr Brown") to understand the allegations and claims brought against the other parties as well as those brought against the KM Defendants. In addition, the claims and allegations set forth in the Complaint attacked the KM Defendants' integrity and professional reputations. The racketeering and related claims accused the KM Defendants of engaging in fraudulent and even grievous criminal behavior. Consequently, even though Plaintiff's claims were completely unsupportable by any evidence, and even though the Complaint was irremediably devoid of sufficient allegations to support the claims made against the KM Defendants, the consequences of Plaintiff's lawsuit posed the risk of professional, personal, and financial havoc if Plaintiff were somehow to succeed.

The Utah legislature has recognized the devastating consequences civil racketeering claims pose to defendants. For that reason, it has implemented a law that encourages plaintiffs to only bring a racketeering claim if it is well-supported by existing evidence – by holding plaintiffs responsible for the defendants' attorneys' fees if the racketeering claim is unsuccessful. The Utah

Pattern of Unlawful Activity Act ("UPUAA") provides that if a party successfully obtains dismissal of civil racketeering claims then that prevailing party "<u>shall</u> recover from the party who brought the action ... reasonable expenses incurred because of the defense against the action, claim, or counterclaim, including a reasonable attorney's fee." Utah Code Ann. § 76-10-1605(8) (emphasis added). As explained by this Court, because of "[t]he potential for abuse of the civil RICO claims and the potential for frivolous suits in search of treble damages, <u>greater responsibility will be placed on the bar to inquire into the factual and legal bases of potential claims or defenses prior to bringing such suit or risk sanctions for failing to do so</u>"[2]; otherwise, racketeering claims simply become "a device to multiply the money damages available to parties embroiled in more commonplace civil litigation, or as a means to vilify civil litigants by labeling them as 'racketeers,' gangsters, extortionists and criminals." *MacArthur v. San Jan Cnty.*, 2005 U.S. Dist. LEXIS 25235, *81-83 & n.42 (D. Utah June 13, 2005) (unpublished) (emphasis added) (citation omitted).

As required by the Legislature, Plaintiff should be held financially responsible for bringing baseless racketeering claims against the KM Defendants – claims that permeate every claim made against the KM Defendants – when absolutely no evidence exists to support such claims, and consequently (as recognized by this Court at the December 16, 2014 hearing and in its *Order on Motions to Dismiss* [Dkt. 78] ("Order")) absolutely no allegations exist in the Complaint to support those (or any other) claims brought against the KM Defendants.

---

[2] Despite this Court's admonition quoted above, Plaintiff's attorney also brought claims of racketeering violations against the KM Defendants in another very similar lawsuit in this Court, which also sought over $100 Million in damages and which also has been dismissed. *See Manzanares v. Terry*, Case No. 2:14-cv-108-TS.

Moreover, the modest amount of fees and expenses requested in the KM Defendants' Motion for a year's worth of legal work defending against Plaintiff's significant claims is absolutely reasonable. Plaintiff has failed to show either that the rates of the KM Defendants' attorneys or the amount of time expended are unreasonable and should not be awarded. The Court should enter the proposed order attached hereto as "Exhibit 2"[3] and award the KM Defendants the full amount requested.

## ARGUMENT

The KM Defendants have met their burden and should be awarded the fees and expenses requested. When fees are "awarded as allowed by law, [they] are awarded as a matter of legal right." *Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1985). Here, the KM Defendants are statutorily entitled to the fees and expenses requested in their Motion pursuant to Utah law. *See* Utah Code Ann. § 76-10-1605(8). As set forth below, the arguments made in the Opposition fail.

1. **The Racketeering Claims Permeated All Claims Against the KM Defendants.**

Plaintiff's UPUAA claim not only was inseparably tied to his RICO claim, it also depended upon the claims that constituted the predicate racketeering offenses and permeated all of the claims brought against the KM Defendants. [*See, e.g.,* Compl., Dkt. 14, ¶ 230.] The work performed by Counsel in defense of the UPUAA claim was, for the most part, inseparable from the work performed in defending against the other claims. Even so, the KM Defendants' fee request was carefully prepared to make sure that inapplicable fees were not included. Fees incurred for work focused exclusively on claims other than the racketeering claims, as well as fees incurred in coordinating with counsel for co-defendants and in initial preparations for

---

[3] The proposed order was emailed to the Court's chambers on February 19, 2015.

4

discovery have been omitted. [*See* Clark Decl., Dkt. 80-1, ¶ 10.]

**2.      The KM Defendants' Motion is Supported by Sufficient Evidence.**

Sufficient evidence supports the amount requested by the KM Defendants. Contrary to Plaintiff's argument, the KM Defendants have met their burden under the federal rules and under Utah law. The Motion, along with the Clark Declaration "(i) state[s] the basis for the award; (ii) specif[ies] the amount claimed; and (iii) … set[s] forth the scope of the effort, the number of hours expended, the hourly rates claimed, and … other pertinent supporting information that justifies the award." DUCivR 54-2(f); *see also* Fed. R. Civ. P. 54(d)(2)(B); Motion, Dkt. 80, pp. ii-iv, 1-5; Clark Decl., Dkt. 80-1, ¶¶ 9-10, 12, 18-22, 24-25, Ex. A. The Clark Declaration states the legal work performed, that the work performed was reasonably necessary, that the Parr Brown billing rates are consistent with the rates customarily charged in the locality for similar services, and states additional factors that should be considered, such as the amount involved in the case, the results attained, and the expertise and experience of the attorneys involved.[4] *See Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988); Clark Decl., Dkt. 80-1, ¶¶ 2, 8-10, 12, 18-22, 24-25, Ex. A. Although trial courts have "'broad discretion in determining what constitutes a reasonable fee,'" a trial court "'abuses its discretion in awarding less than the amount [of attorney fees] requested *unless* the reduction is warranted' by one or more of the above factors." *Endrody v. Endrody*, 914 P.2d 1166, 1171 (Utah Ct. App. 1996) (alteration in original) (citations omitted); *see also Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (in evaluating fee application

---

[4] Plaintiff cites almost exclusively to cases addressing fee applications brought in civil rights cases pursuant to 42 U.S.C. § 1988, *see Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Cadena v. The Pacesetter Corp.*, 224 F.3d 1203, 1216 (10th Cir. 2000); *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006); *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); however, the KM Defendant's Motion is based on a Utah statute, not Section 1988.  Nevertheless, even if the principles in the civil rights cases were applied here, the KM Defendants have met their burden.

in civil rights case, stating that "the district court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a """request for attorney's fees should not result in a second major litigation"""" (citations omitted)). On the other hand, Plaintiff has not submitted any evidence contradicting Mr. Clark's testimony. *Cf. Martinez v. Roscoe*, 100 F.3d 121, 124 (10th Cir. 1996) (explaining that where the opposing party has "made only generalized objections to the amount of the fees awarded, without any 'evidence challenging the accuracy and reasonableness of the hours charged,'" they have "waived their right to challenge the determination that the fees awarded were reasonable" (citation omitted)).

Moreover, the Court will not review the Motion and Clark Declaration in a vaccum. Much of the work performed by the KM Defendants' counsel is self-evident from the record and the Court itself is familiar with this lawsuit, including the written papers filed; the oral arguments presented; and the number, complexity, and required elements of the claims – such as the racketeering and related claims. *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249, 1256 (10th Cir. 1998) (in evaluating fee application in civil rights case, acknowledging that "[t]he district court 'saw "the attorneys' work first hand,"'" is familiar with "the complexities of the litigation," and therefore """has far better means of knowing what is just and reasonable than an appellate court"""" (citations omitted)). As the Court is well aware, Plaintiff filed a 77-page Complaint which also contained 24 exhibits. [Dkt. 14.] Obviously it took time to properly review and evaluate that lengthy document, including the racketeering and related claims, in preparing the motion to dismiss papers. Also, Counsel was required to review motion papers filed by co-defendants and Plaintiff's responses to those motions. [*See, e.g.*, Dkts. 42, 44, 48, 54, 55, 56, 62, 63, 65.] Further, the KM Defendants' motion to dismiss and memorandum in support [Dkt. 45]

6

was 28 pages long (which, for the Court's benefit, was significantly shorter than it otherwise would have been by repeatedly citing to co-defendant LDSFS's motion to dismiss for its explanation of applicable law, legal standards, general shortcomings in the Complaint, etc., *see, e.g.*, Dkt. 45 pp. 18, 19, 20, 22, 23, 24, 25, 26, 27). Counsel was required to address all of Plaintiff's 14 causes of action, requiring legal research and analysis, particularly with respect to the complex requirements of civil racketeering claims brought pursuant to UPUAA and RICO. Counsel also was required to review and respond to Plaintiff's 39-page memorandum in opposition, which also contained 11 exhibits, including a brand new affidavit. [*See* Dkts. 53 (Opp.), 64 (KM Defendants' 28-page Reply MIS).]  And Counsel was required to attend oral argument and prepare for same, which included being prepared to discuss the arguments, issues and/or claims raised in Plaintiff's Complaint and motion papers, the KM Defendants' motion papers in support of the racketeering claims, and the motion papers filed by the other co-defendants. *See* Utah R. Prof. Resp. 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); *id.* Comment 5 ("Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more extensive treatment than matters of lesser complexity and consequence…."); *cf. Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 404 F. Supp. 2d 1281, 1284 (D. Kansas 2005) (acknowledging, in determining reasonableness of work performed, issue is "whether, at the time the work was

performed [vs. hindsight], a reasonable attorney would have engaged in similar time expenditures"). Also, Counsel was required to review Plaintiff's Rule 56(d) motion and supporting papers [Dkt. 70], review co-defendants' memoranda in opposition to that motion [Dkts. 71, 73, 74], and draft and file an opposition to it [Dkt. 72]. *See Case*, 157 F.3d at 1250 (in determining reasonableness of hours expended in fee application in civil rights case, stating that court should consider "'the responses necessitated by the maneuvering of the other side'").

In addition, Parr Brown did not overstaff the case or work inefficiently. Parr Brown did not perform unnecessarily duplicative work but instead worked in an efficient manner. Approximately 71% of the time set forth in the Motion was performed by only one shareholder (Ms. Fors) [*see* Clark Decl. (Dkt. 80-1) ¶ 20], who was primarily responsible for research and writing under the overall direction of Mr. Clark.

Moreover, importantly, Counsel was successful. *See Hensley v. Eckerhart*, 103 S. Ct. 1933, 1938, 1940 (1983) (in evaluating fee application in civil rights case, repeatedly stating that court may base its fee award in part on a finding regarding the excellence and success of the results obtained). The significance of the overall relief obtained in relation to the hours reasonably expended in the litigation – particularly in light of what was at stake here – is considerable and supports the requested award.

Finally, even though the KM Defendants contend that the evidence presented by the Clark Declaration sufficiently sets forth the work performed, hours worked for which an award of fees is requested, and the reasonableness of the hourly rates, to alleviate any potential concern that the fees and expenses requested are not reasonable, a Supplement to the Clark Declaration is attached hereto as "Exhibit 1," which sets forth the descriptions of the work performed and the

number of hours spent on each task. These descriptions echo the information already presented by the Clark Declaration with regards to the time submitted with the Motion. They also echo the description of the work performed that is contained in the Clark Declaration. [*See* Clark Decl., Dkt. 80-1, ¶ 9.][5]

3.      **Parr Brown's Rates are Reasonable in Light of Prevailing Market Rates.**

The Clark Declaration provides sufficient evidence that Parr Brown's rates are reasonable in light of prevailing market rates in the relevant community. *Cf. Malloy*, 73 F.3d at 1018 (evaluating fee application in civil rights case). The Opposition challenges the hourly rates of the Parr Brown attorneys by stating that the hourly rates of Plaintiff's counsel are lower. [*See* Opp., p. iv ¶ 4.] Plaintiff also generally argues, citing to a court decision discussing hourly rates from over ten years ago (2003), that Parr Brown's rates are unreasonable. However, Plaintiff has not supported his arguments with a sworn statement or any other type of admissible evidence.

Moreover, he is incorrect, as proven by a simple examination of fee applications filed in this Court (of which this Court can take judicial notice). The following table shows that Parr Brown's billing rates are comparable to, and even less than, rates of other attorneys in town:

| Case Name and No. | Docket No. | Utah Law Firm | Attorneys | Usual Hourly Rates |
|---|---|---|---|---|
| *Sec. and Exch. Comm'n v. Mgmt. Solutions, Inc.*, 2:11-cv-01165-BSJ | Dkt. 305 p. 17, ¶ 25 | Holland & Hart | David K. Broadbent | $420.00 (5/8/12 filing) |
| *Sec. and Exch. Comm'n v. Am. Pension Serv., Inc.*, 2:14-cv-00309-RJS-DBP | Dkt. 148 p. 3, ¶ 13 | Durham Jones & Pinegar | Paul T. Moxley<br>Thomas J. Burns<br>Z. Ryan Pahnke<br>Joshua D. Chandler (assoc.) | $425.00<br>$280.00<br>$270.00<br>$200.00<br>(7/11/14 filing) |

---

[5] Notably, the Tenth Circuit allows block billing, even in fee applications brought in civil rights cases. *See Cadena*, 224 F.3d at 1215.

9

| | | | | |
|---|---|---|---|---|
| *Sec. and Exch. Comm'n v. Vescor Capital Corp.*, 1:08-cv-00012-DB | Dkt. 509 p. 6, ¶ 12 | Prince, Yeats & Geldzahler | John C. Heaton<br>Robert G. Wing<br>M. David Eckersley<br>Sally B. McMinimee | $335.00<br>$325.00<br>$315.00<br>$285.00<br>(12/1/14 filing) |
| *Sec. and Exch. Comm'n v. Vescor Capital Corp.*, 1:08-cv-00012-DB | Dkt. 509 p. 6, ¶ 13 | Ray, Quinney & Nebeker | Michael Johnson<br>Robert G. Wing<br>Gary Longmore<br>Blake Bauman | $375.00<br>$330.00<br>$320.00<br>$260.00<br>(12/1/14 filing) |
| *Sentry Fin. Corp. v. Exterran Energy Solutions, L.P.*, 2:14-cv-00338-DB | Dkt. 58 pp. 8-9, ¶¶ 15-17 and Dkt. 58-2 | Misc. (*see* ¶¶ 15-17) | Misc. (*see* Dkt. 58 ¶¶ 15-17) | $225 to $325 for junior attys<br>$370 to $550 for senior attys<br>(11/26/14 filing) |

*See also Case*, 157 F.3d at 1256-57 (in evaluating fee application in civil rights case, stating that district court abuses its discretion when it ignores the market evidence presented by the movant).[6]

### 4. The KM Defendants' Motion is Timely.

Plaintiff has argued that the Court should reserve granting the Motion until after a final judgment/order has been entered in the case. However, it is clear from the proceedings to this point that Mr. Strickland has no basis for the claims asserted, and they have been dismissed without any effort to re-plead. The Court's Order properly declares that the KM Defendants are a "prevailing party" entitled to costs and "other relief to which they may be entitled upon application," which would include attorneys' fees. [Order, Dkt. 78, p. 3 ¶ D.] For that reason, the

---

[6] Plaintiff's misplaced reliance on *Robinson v. Equifax Info. Serv., LLC*, 560 F.3d 235, 245 (4th Cir. 2009) [Opp. p. iii], a nonbinding Fourth Circuit case, is telling. The Tenth Circuit has not adopted the rule cited by Plaintiff that it is an abuse of discretion for the district court to base its award of attorneys' fees and costs on only the affidavit of the KM Defendants' own counsel without, for example, affidavits from other local attorneys who are familiar with the skills of the fee applicant and more generally with the type of work in the relevant community. Moreover, common sense refutes Plaintiff's argument. Kirton McConkie is one of the largest and most prestigious law firms in the State of Utah and it would not select counsel without appropriate skill and reputation.

10

KM Defendants' Rule 54 Motion was due within 14 days after entry of the Order. *See* DUCivR 54-2(f).[7]

## CONCLUSION

For the reasons set forth above, as well as those set forth in the Motion, the Court should grant the Motion and award the KM Defendants the sum of $47,099.94.

RESPECTFULLY SUBMITTED this 30th of March, 2015.

PARR BROWN GEE & LOVELESS


/s/  Laura G. Kennedy
Laura G. Kennedy
*Attorneys for Defendants Kirton McConkie,
PC, Larry S. Jenkins, and David J. Hardy*

---

[7] Plaintiff has requested oral argument. The KM Defendants are, of course, anxious to provide whatever information would assist the Court through a hearing or otherwise. Unnecessary proceedings, however, simply increase attorneys' fees for all concerned.

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of March, 2015, the foregoing **REPLY MEMORANDUM IN SUPPORT OF RULE 54 MOTION OF KIRTON & MCCONKIE, LLC, LARRY S. JENKINS, AND DAVID J. HARDY FOR ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM IN SUPPORT** was filed via the CM/ECF system, which provided service to the following:

>Wesley D. Hutchins
>THE HUTCHINS LAW FIRM PC
>6751 S Adventure Way
>West Jordan, Utah 84081
>Email:  wes@thehutchinslawfirm.com
>
>Rick L. Rose
>RAY QUINNEY & NEBEKER (SLC)
>36 S State St, Ste 1400
>PO Box 45385
>Salt Lake City, UT 84145-0385
>Email:  rose@rqn.com
>
>Alan L. Sullivan
>James D. Gardner
>Douglas P. Farr
>SNELL & WILMER
>15 W. South Temple, Suite 1200
>Gateway Tower West
>Salt Lake City, UT 84101
>Email: asullivan@swlaw.com
>jgardner@swlaw.com
>dfarr@swlaw.com
>
>Kenneth B. Black
>Monica S. Call
>STOEL RIVES (UT)
>201 S Main Street, Suite 1100
>Salt Lake City, UT  84111-4904
>Email:  kbblack@stoel.com
>         mscall@stoel.com

/s/ Laura G. Kennedy